UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

|  |  |
|---|---|
| **DANIEL PRATT,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**RON JOY, in his individual capacity, LISA CARGILL, in her individual capacity, MIRNA TORRES, in her individual capacity, EDGAR GILMORE, in his individual capacity, and RUBEN GARIBAY, in his individual capacity,**<br><br>**Defendants.** | **Civil Action No.: 26-5079**<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

PLAINTIFF DANIEL PRATT, by his attorneys Nelson S. Ebaugh, P.C., and Offit Kurman, P.A., as and for his Complaint against Defendants RON JOY, LISA CARGILL, MIRNA TORRES, RUBEN GARIBAY, and EDGAR GILMORE respectfully alleges as follows:

## THE NATURE OF THIS ACTION

1. This lawsuit is brought on behalf of Plaintiff Daniel Pratt ("Pratt" or "Plaintiff").

2. This action is brought under 42 U.S.C. § 1983 to redress violations of Pratt's rights under the Fourth and Fourteenth Amendments to the United States Constitution, together with supplemental state-law claims.

3. In violation of the Fourth and Fourteenth Amendments of the Constitution of the United States of America, Ron Joy, Lisa Cargill, Mirna Torres, and Edgar Gilmore subjected Pratt to a malicious prosecution and violations of his substantive due process rights.

4. As detailed more extensively below, Joy, Cargill, Torres, and Gilmore abused the criminal justice system by providing false information to law enforcement officials, which resulted in the initiation and continuation of a faulty criminal prosecution against Pratt.

1

5.	In the end, the truth thankfully prevailed, and all of the charges against Pratt were dismissed.

6.	Joy, Gilmore, and Ruben Garibay also tortiously interfered with Pratt's prospective business relations by ensuring that Pratt's contract with Opus Inspection was not renewed.

7.	Pratt has been greatly damaged by Defendants' actions, as his constitutional rights have been violated, his reputation has been tarnished, he has lost the business that he spent decades cultivating, and his future career prospects have been severely compromised, if not completely extinguished.

8.	As a result of Defendants' actions, Pratt has suffered the loss of his rights under the Constitution of the United States, reputational damages, economic injuries, and the loss of career opportunities.

## THE PARTIES

9.	Pratt is a natural person residing in Texas.

10.	Ron Joy is a former Director for the Texas Department of Public Safety who was employed by the Texas Department of Public Safety at all times relevant to this litigation.

11.	Lisa Cargill is a Service Director for the Texas Department of Public Safety who was employed by the Texas Department of Public Safety at all times relevant to this litigation.

12.	Mirna Torres is a former Auditor/Investigator for the Texas Department of Public Safety who was employed by the Texas Department of Public Safety at all times relevant to this litigation.

13.	Edgar Gilmore is a planner at the Texas Commission on Environmental Quality who was employed at the Texas Commission on Environmental Quality at all times relevant to this litigation.

2

14.     Ruben Garibay is a regional manager at the Texas Department of Public Safety who was employed by the Texas Department of Public Safety at all times relevant to this litigation.

**JURISDICTION AND VENUE**

15.     This Court has federal question jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 because the federal claims herein arise under federal law, namely violations of the Constitution of the United States of America.

16.     The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the federal claims that they form part of the same case or controversy.

17.     The Court has personal jurisdiction over Joy because he resides in the State of Texas.

18.     The Court has personal jurisdiction over Cargill because she resides in the State of Texas.

19.     The Court has personal jurisdiction over Torres because she resides in the State of Texas.

20.     The Court has personal jurisdiction over Gilmore because he resides in the State of Texas.

21.     The Court has personal jurisdiction over Garibay because he resides in the State of Texas.

22.     Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

A.   **Pratt's Decades-Long Career As An Automotive Inspection Machine Distributor**

23.   Pratt began working in the automotive inspection equipment distribution business in 1995.

24.   In 2008 he became the Owner and President of D & L Enterprises, Inc. ("D & L"), a company that acts as a distributor for manufacturers of vehicle inspection equipment.

25.   Pratt is currently still the Owner and President of D & L.

26.   From 2008 to 2024, D & L was the sole distributor of vehicle inspection equipment for Opus Inspection, a State-certified supplier of new and updated Texas Analyzer Systems for Texas's Vehicle Emissions Inspection & Maintenance Program that are available to all licensed emissions inspection stations.

27.   In his role as a distributor for Opus Inspection, Pratt would receive orders from inspection station owners seeking vehicle inspection equipment.

28.   The orders would be provided to Opus Inspection.

29.   Opus Inspection would then fill the order by delivering the equipment to inspection stations.

30.   D & L was not responsible for delivering or transporting any equipment.

31.   From March 2019 to 2024, D & L distributed 90% of all vehicle inspection equipment in the State of Texas.

32.   From March 2019 to 2024, D & L generated $4,000,000 annually in revenue.

33.   From the time of his initial employment in the industry in 1995 until November 7, 2024, Pratt had never been accused of any illegal conduct in the operation of D & L.

34.   Pratt has never engaged in any illegal conduct in the operation of D & L at any

4

time.

B.    **Pratt's Interactions With The Texas Department Of Public Safety**

35.    The Texas Department of Public Safety implements and enforces laws and regulations related to, *inter alia*, state-mandated vehicle inspections in the State of Texas.

36.    In this capacity, the Texas Department of Public Safety was responsible for granting approval to inspection stations prior to the delivery of vehicle inspection equipment.

37.    Inspection stations seeking to obtain and operate vehicle inspection equipment must submit an application to the Texas Department of Public Safety.

38.    Once an application is approved, an inspection station cannot operate vehicle inspection equipment until an in-person assessment is performed by an Auditor/Investigator employed by the Texas Department of Public Safety.

39.    In the post-COVID era, the Texas Department of Public Safety has routinely failed to send Auditors/Investigators to inspection stations to conduct the required assessments in a timely manner, delaying the ability of inspection station operators to utilize the vehicle inspection equipment distributed by Opus Inspection.

40.    Several of Pratt's customers experienced long delays in scheduling the required assessments with Texas Department of Public Safety Auditors/Inspectors.

41.    As a result, on July 16, 2024, Pratt reached out to JoJo Heselmeyer, Deputy Executive Director of the Texas State Inspection Association, for assistance in dealing with this issue.

42.    Heselmeyer put Pratt in contact with Cargill.

43.    In an email to Cargill on July 16, 2024, Pratt detailed the significant delays in scheduling the required Texas Department of Public Safety assessments that several of his

5

customers had been dealing with for nearly two months.

44.    All of the delayed assessments were supposed to be conducted by Torres.

45.    On July 17, 2024, Joy inserted himself into the email correspondence between Pratt, Heselmeyer, and Cargill requesting that he be contacted with any future concerns that Heselmeyer had with the Texas vehicle inspection program.

46.    On July 19, 2024, Pratt provided Cargill with an outgoing call log from one of his customers showing dozens of calls the customer made to Torres between April 11, 2024 and July 5, 2024 in an effort to have Torres conduct the necessary assessment at his inspection station.

47.    Pratt further advised Cargill that Torres failed to answer any of these calls from the customer.

**C.    Pratt Is Arrested**

48.    On November 7, 2024, Pratt received a call to pick up inspection equipment that had been confiscated by the Houston Police Department.

49.    On his way to pick up the confiscated equipment, Pratt was arrested for allegedly engaging in organized crime and conspiracy to commit fraud of a government document.

**D.    The Criminal Proceeding Against Pratt**

50.    On November 8, 2024, Pratt was formally charged with the felony of Engaging in Organized Criminal Activity – Participate in Combination.

51.    Specifically, the criminal indictment asserted that Pratt unlawfully entered an illegal enterprise with several known criminals to commit the offense of Tampering with a Government Record with Intent to Defraud or Harm by unlawfully and knowingly making a false entry into a government record, namely, a Texas State Inspection Report with the intent to defraud or harm another.

52.    The criminal indictment further asserted that Pratt agreed to engage in this offense

6

with the known criminals.

53. The criminal indictment also claimed that in furtherance of this agreement Pratt improperly assisted with the transfer of inspection machines between inspection stations, which caused the entry of a false Texas Inspection Report into the Texas Information Management System, despite the fact that only Opus Inspection transports equipment and that D & L's role in the process is limited to taking orders and providing the order information to Opus Inspection.

54. The documentary evidence used to support the charges was a report generated by the Texas Department of Public Safety.

55. The charges against Pratt were dismissed at the State's request on June 27, 2025.

**E. Joy, Cargill, Torres, and Gilmore Provided False Information To Cause And Procure Pratt's Arrest And Prosecution**

56. Joy falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt unlawfully entered an illegal enterprise with several known criminals to commit the offense of Tampering with a Government Record with Intent to Defraud or Harm.

57. Joy falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt, in combination with these known criminals, unlawfully and knowingly made a false entry into a government record, namely, a Texas State Inspection Report with the intent to defraud or harm another.

58. Joy falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt agreed to engage in this offense with the known criminals.

59. Joy falsely informed the Houston Police Department and the Harris County District Attorney's Office that in furtherance of this agreement Pratt improperly assisted with the transfer of inspection machines between inspection stations, which caused the entry of a false Texas Inspection Report into the Texas Information Management System.

7

60. Cargill falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt unlawfully entered an illegal enterprise with several known criminals to commit the offense of Tampering with a Government Record with Intent to Defraud or Harm.

61. Cargill falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt, in combination with these known criminals, unlawfully and knowingly made a false entry into a government record, namely, a Texas State Inspection Report with the intent to defraud or harm another.

62. Cargill falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt agreed to engage in this offense with the known criminals.

63. Cargill falsely informed the Houston Police Department and the Harris County District Attorney's Office that in furtherance of this agreement Pratt improperly assisted with the transfer of inspection machines between inspection stations, which caused the entry of a false Texas Inspection Report into the Texas Information Management System.

64. Torres falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt unlawfully entered an illegal enterprise with several known criminals to commit the offense of Tampering with a Government Record with Intent to Defraud or Harm.

65. Torres falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt, in combination with these known criminals, unlawfully and knowingly made a false entry into a government record, namely, a Texas State Inspection Report with the intent to defraud or harm another.

66. Torres falsely informed the Houston Police Department and the Harris County

District Attorney's Office that Pratt agreed to engage in this offense with the known criminals.

67. Torres falsely informed the Houston Police Department and the Harris County District Attorney's Office that in furtherance of this agreement Pratt improperly assisted with the transfer of inspection machines between inspection stations, which caused the entry of a false Texas Inspection Report into the Texas Information Management System.

68. Gilmore falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt unlawfully entered an illegal enterprise with several known criminals to commit the offense of Tampering with a Government Record with Intent to Defraud or Harm.

69. Gilmore falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt, in combination with these known criminals, unlawfully and knowingly made a false entry into a government record, namely, a Texas State Inspection Report with the intent to defraud or harm another.

70. Gilmore falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt agreed to engage in this offense with the known criminals.

71. Gilmore falsely informed the Houston Police Department and the Harris County District Attorney's Office that in furtherance of this agreement Pratt improperly assisted with the transfer of inspection machines between inspection stations, which caused the entry of a false Texas Inspection Report into the Texas Information Management System.

72. Joy, Cargill, Torres, and Gilmore knew that the aforementioned statements were false when they made them.

73. Because Joy, Cargill, Torres, and Gilmore's statements were false, there was no probable cause to arrest and prosecute Pratt.

74. In reality, Pratt never unlawfully entered an illegal enterprise with several known criminals to commit the offense of Tampering with a Government Record with Intent to Defraud or Harm.

75. Pratt never, in combination with these known criminals, unlawfully and knowingly made a false entry into a government record, namely, a Texas State Inspection Report with the intent to defraud or harm another.

76. Pratt never agreed to engage in this offense with the known criminals.

77. Pratt never improperly assisted with the transfer of inspection machines between inspection stations, which caused the entry of a false Texas Inspection Report into the Texas Information Management System in furtherance of any agreement with the known criminals.

78. As a result of the false statements made by Joy, Cargill, Torres, and Gilmore, Pratt was arrested for and ultimately charged with the felony of Engaging in Organized Criminal Activity – Participate in Combination.

79. Joy, Cargill, Torres, and Gilmore made the aforementioned false statements in response to Pratt's complaints about the Texas Department of Public Safety's failure to conduct timely audits of inspection service stations, particularly Torres' repeated failure to conduct audits when requested by inspection service station operators.

80. As a result of Joy, Cargill, Torres, and Gilmore's actions, Pratt's reputation has been tarnished, he has lost the business that he spent decades cultivating, and his future career prospects have been severely compromised, if not completely extinguished.

**F.    Joy, Gilmore, and Garibay Tortiously Interfere With Pratt's Prospective Business Relations With Opus Inspection**

81. Following Pratt's arrest, Joy, Gilmore, and Garibay intentionally and falsely told David Lewis and John Bradley at Opus Inspection that Pratt was involved in criminal activity

related to the improper use of vehicle inspection systems.

82. Joy, Gilmore, and Garibay also directed Opus Inspection not to renew its distribution contract with Pratt.

83. In recapping this conversation to Pratt, Bradley asked Pratt, "Who did you piss off at the State?"

84. Joy, Gilmore, and Garibay knew that interference with Pratt's business arrangement was certain or substantially likely to occur as a result of their actions.

85. Joy, Gilmore, and Garibay lacked any justification, as they knew that the statements they made to Opus Inspection regarding Pratt were false.

86. Pratt's last distribution contract with Opus Inspection was terminated on November 7, 2024.

87. Prior to the actions taken by Joy, Gilmore, and Garibay, Opus Inspection regularly renewed its distribution contract with Pratt upon expiration as a matter of course.

88. As a result, it was reasonably probable that Pratt and Opus Inspection would have continued their business relationship by entering a new distribution agreement following the expiration of Pratt's last distribution contract with Opus Inspection.

89. As a result of the actions taken by Joy, Gilmore, and Garibay, Opus Inspection prematurely terminated its distribution contract with Pratt and declined to enter into a new distribution contract.

90. Pratt suffered damages as a result of the actions taken by Joy, Gilmore, and Garibay.

91. Specifically, Pratt suffered significant future economic losses when he lost his distribution arrangement with Opus Inspection as a result of the actions taken by Joy, Gilmore, and Garibay.

92.     To date, Pratt has suffered approximately $8,000,000 in economic losses and will continue to suffer further economic losses in the future.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST JOY, CARGILL, TORRES, AND GILMORE

### (42 U.S.C. § 1983 – Fourth Amendment Malicious Prosecution)

93.     Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

94.     A cause of action for malicious prosecution against a state actor occurs upon (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendants against the plaintiff who was the defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; (6) damages; and (7) an unlawful Fourth Amendment seizure.

95.     A criminal proceeding was commenced against Pratt by the Houston Police Department and the Harris County District Attorney's Office.

96.     Following its commencement, the criminal proceeding continued against Pratt.

97.     Joy falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt unlawfully entered an illegal enterprise with several known criminals to commit the offense of Tampering with a Government Record with Intent to Defraud or Harm.

98.     Joy falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt, in combination with these known criminals, unlawfully and knowingly made a false entry into a government record, namely, a Texas State Inspection Report with the intent to defraud or harm another.

99.     Joy falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt agreed to engage in this offense with the known criminals.

100. Joy falsely informed the Houston Police Department and the Harris County District Attorney's Office that in furtherance of this agreement Pratt improperly assisted with the transfer of inspection machines between inspection stations, which caused the entry of a false Texas Inspection Report into the Texas Information Management System.

101. Cargill falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt unlawfully entered an illegal enterprise with several known criminals to commit the offense of Tampering with a Government Record with Intent to Defraud or Harm.

102. Cargill falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt, in combination with these known criminals, unlawfully and knowingly made a false entry into a government record, namely, a Texas State Inspection Report with the intent to defraud or harm another.

103. Cargill falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt agreed to engage in this offense with the known criminals.

104. Cargill falsely informed the Houston Police Department and the Harris County District Attorney's Office that in furtherance of this agreement Pratt improperly assisted with the transfer of inspection machines between inspection stations, which caused the entry of a false Texas Inspection Report into the Texas Information Management System.

105. Torres falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt unlawfully entered an illegal enterprise with several known criminals to commit the offense of Tampering with a Government Record with Intent to Defraud or Harm.

106. Torres falsely informed the Houston Police Department and the Harris County

District Attorney's Office that Pratt, in combination with these known criminals, unlawfully and knowingly made a false entry into a government record, namely, a Texas State Inspection Report with the intent to defraud or harm another.

107.    Torres falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt agreed to engage in this offense with the known criminals.

108.    Torres falsely informed the Houston Police Department and the Harris County District Attorney's Office that in furtherance of this agreement Pratt improperly assisted with the transfer of inspection machines between inspection stations, which caused the entry of a false Texas Inspection Report into the Texas Information Management System.

109.    Gilmore falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt unlawfully entered an illegal enterprise with several known criminals to commit the offense of Tampering with a Government Record with Intent to Defraud or Harm.

110.    Gilmore falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt, in combination with these known criminals, unlawfully and knowingly made a false entry into a government record, namely, a Texas State Inspection Report with the intent to defraud or harm another.

111.    Gilmore falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt agreed to engage in this offense with the known criminals.

112.    Gilmore falsely informed the Houston Police Department and the Harris County District Attorney's Office that in furtherance of this agreement Pratt improperly assisted with the transfer of inspection machines between inspection stations, which caused the entry of a false Texas Inspection Report into the Texas Information Management System.

14

113.    A person procures a criminal prosecution if her actions are enough to cause the prosecution, and but for her actions, the prosecution would not have occurred.

114.    A person procures a criminal prosecution despite the fact that the decision to prosecute is left to the discretion of another, including a law enforcement official or the grand jury, when the person provides information which he or she knows is false.

115.    Joy, Cargill, Torres, and Gilmore were responsible for commencing and continuing the criminal proceeding against Pratt because they influenced the decision to prosecute Pratt.

116.    Specifically, Joy, Cargill, Torres, and Gilmore lied to and misled the Houston Police Department and the Harris County District Attorney's Office as detailed above.

117.    Joy, Cargill, Torres, and Gilmore's misconduct was the cause of the Houston Police Department's and the Harris County District Attorney's Office's decision to commence and continue the criminal proceeding against Pratt.

118.    The arrest warrant, charging decision, and indictment against Pratt were tainted by Joy, Cargill, Torres, and Gilmore's false statements to the Houston Police Department and the Harris County District Attorney's Office.

119.    Joy, Cargill, Torres, and Gilmore's false statements misdirected the Houston Police Department and the Harris County District Attorney's Office into believing that Pratt had committed a crime.

120.    The criminal proceeding terminated in Pratt's favor when all charges were dismissed on June 27, 2025.

121.    There was a lack of probable cause for the commencement and continuation of the criminal proceeding against Pratt.

122.    Joy, Cargill, Torres, and Gilmore's statements to the Houston Police Department

and the Harris County District Attorney's Office, as detailed above, were false.

123.    Joy, Cargill, Torres, and Gilmore knew that their statements were false when they made them.

124.    Joy, Cargill, Torres, and Gilmore knew that Pratt had not unlawfully entered an illegal enterprise with several known criminals to commit the offense of Tampering with a Government Record with Intent to Defraud or Harm.

125.    Joy, Cargill, Torres, and Gilmore knew that Pratt had not, in combination with these known criminals, unlawfully and knowingly made a false entry into a government record, namely, a Texas State Inspection Report with the intent to defraud or harm another.

126.    Joy, Cargill, Torres, and Gilmore knew that Pratt had not agreed to engage in this offense with the known criminals.

127.    Joy, Cargill, Torres, and Gilmore knew that Pratt had not improperly assisted with the transfer of inspection machines between inspection stations, which caused the entry of a false Texas Inspection Report into the Texas Information Management System in furtherance of any agreement with the known criminals.

128.    Joy, Cargill, Torres, and Gilmore knew that Pratt had not committed any crime when they made their false statements to the Houston Police Department and the Harris County District Attorney's Office.

129.    Rather, Joy, Cargill, Torres, and Gilmore were seeking to harm Pratt when they made their false statements to the Houston Police Department and the Harris County District Attorney's Office because Pratt had previously informed the Texas Department of Public Safety that Torres was not properly executing her duties as an auditor.

130.    In light of the facts known to Joy, Cargill, and Torres at the time they made their

16

false statements to the Houston Police Department and the Harris County District Attorney's office, no reasonable employee at the Texas Department of Public Safety would believe there was a fair probability that Pratt had committed a crime.

131. In light of the facts known to Gilmore at the time he made his false statements to the Houston Police Department and the Harris County District Attorney's office, no reasonable employee at the Texas Commission on Environmental Quality would believe there was a fair probability that Pratt had committed a crime.

132. Accordingly, Joy, Cargill, Torres, and Gilmore knew that there was no probable cause to arrest and prosecute Pratt.

133. Malice can be inferred from the absence of probable cause.

134. Pratt has been damaged by Defendants' misconduct.

135. Specifically, Pratt's reputation has been tarnished, he has lost the business that he spent decades cultivating, and his future career prospects have been severely compromised, if not completely extinguished.

136. An invalid warrant that results in an unlawful arrest suffices to satisfy the Fourth Amendment seizure element of a malicious prosecution.

137. Because there was no probable cause for the initial warrant procured against Pratt, the arrest warrant was invalid, and Pratt's arrest was unlawful.

138. The elements of a malicious prosecution claim were clearly established by the Fifth Circuit at the time of the improper commencement and continuation of the criminal proceeding against Pratt.

139. As a result of the foregoing, Pratt is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST JOY, CARGILL, TORRES, AND GILMORE

### (42 U.S.C. § 1983 – Fourteenth Amendment Substantive Due Process / Fabrication of Evidence)

140.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

141.    A substantive due process violation occurs when state actors intentionally fabricate evidence and successfully procure false charges against an individual for a felony.

142.    As detailed above, Joy, Cargill, Torres, and Gilmore intentionally provided false information to the Houston Police Department and the Harris County District Attorney's Office, which resulted in false felony charges against Pratt and the commencement and continuation of a malicious prosecution.

143.    The arrest warrant, charging decision, and indictment against Pratt were tainted by Joy, Cargill, Torres, and Gilmore's false statements to the Houston Police Department and the Harris County District Attorney's Office.

144.    Joy, Cargill, Torres, and Gilmore's false statements misdirected the Houston Police Department and the Harris County District Attorney's Office into believing that Pratt had committed a crime.

145.    The elements of a malicious prosecution claim were clearly established by the Fifth Circuit at the time of the improper commencement and continuation of the criminal proceeding against Pratt.

146.    As detailed above, the actions taken by Joy, Cargill, Torres, and Gilmore to commence and continue a malicious prosecution against Pratt constituted conscious-shocking behavior.

147.    As a result of the foregoing, Pratt is entitled to damages in an amount to be

18

determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST JOY, CARGILL, TORRES, AND GILMORE

### (Texas State Law Malicious Prosecution)

148.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

149.    Malicious prosecution occurs when (1) a criminal prosecution was commenced against the plaintiff; (2) the prosecution was initiated or procured by the defendant; (3) the prosecution terminated in favor of the plaintiff; (4) the plaintiff was innocent; (5) the defendant lacked probable cause to instigate the prosecution; (6) the defendant acted with malice in bringing about the prosecution; and (7) the plaintiff suffered damages as a result of the prosecution.

150.    A criminal proceeding was commenced against Pratt by the Houston Police Department and the Harris County District Attorney's Office.

151.    Following its commencement, the criminal proceeding continued against Pratt.

152.    The prosecution against Pratt was procured by Joy, Cargill, Torres, and Gilmore.

153.    A person procures a criminal prosecution if his or her actions are enough to cause the prosecution, and but for his or her actions, the prosecution would not have occurred.

154.    A person procures a criminal prosecution despite the fact that the decision to prosecute is left to the discretion of another, including a law enforcement official or the grand jury, when the person provides information which he or she knows is false.

155.    Joy falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt unlawfully entered an illegal enterprise with several known criminals to commit the offense of Tampering with a Government Record with Intent to Defraud or Harm.

156.    Joy falsely informed the Houston Police Department and the Harris County District

19

Attorney's Office that Pratt, in combination with these known criminals, unlawfully and knowingly made a false entry into a government record, namely, a Texas State Inspection Report with the intent to defraud or harm another.

157. Joy falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt agreed to engage in this offense with the known criminals.

158. Joy falsely informed the Houston Police Department and the Harris County District Attorney's Office that in furtherance of this agreement Pratt improperly assisted with the transfer of inspection machines between inspection stations, which caused the entry of a false Texas Inspection Report into the Texas Information Management System.

159. Cargill falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt unlawfully entered an illegal enterprise with several known criminals to commit the offense of Tampering with a Government Record with Intent to Defraud or Harm.

160. Cargill falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt, in combination with these known criminals, unlawfully and knowingly made a false entry into a government record, namely, a Texas State Inspection Report with the intent to defraud or harm another.

161. Cargill falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt agreed to engage in this offense with the known criminals.

162. Cargill falsely informed the Houston Police Department and the Harris County District Attorney's Office that in furtherance of this agreement Pratt improperly assisted with the transfer of inspection machines between inspection stations, which caused the entry of a false Texas Inspection Report into the Texas Information Management System.

163. Torres falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt unlawfully entered an illegal enterprise with several known criminals to commit the offense of Tampering with a Government Record with Intent to Defraud or Harm.

164. Torres falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt, in combination with these known criminals, unlawfully and knowingly made a false entry into a government record, namely, a Texas State Inspection Report with the intent to defraud or harm another.

165. Torres falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt agreed to engage in this offense with the known criminals.

166. Torres falsely informed the Houston Police Department and the Harris County District Attorney's Office that in furtherance of this agreement Pratt improperly assisted with the transfer of inspection machines between inspection stations, which caused the entry of a false Texas Inspection Report into the Texas Information Management System.

167. Gilmore falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt unlawfully entered an illegal enterprise with several known criminals to commit the offense of Tampering with a Government Record with Intent to Defraud or Harm.

168. Gilmore falsely informed the Houston Police Department and the Harris County District Attorney's Office that Pratt, in combination with these known criminals, unlawfully and knowingly made a false entry into a government record, namely, a Texas State Inspection Report with the intent to defraud or harm another.

169. Gilmore falsely informed the Houston Police Department and the Harris County

District Attorney's Office that Pratt agreed to engage in this offense with the known criminals.

170.    Gilmore falsely informed the Houston Police Department and the Harris County District Attorney's Office that in furtherance of this agreement Pratt improperly assisted with the transfer of inspection machines between inspection stations, which caused the entry of a false Texas Inspection Report into the Texas Information Management System.

171.    Joy, Cargill, Torres, and Gilmore's misconduct was the cause of the Houston Police Department's and the Harris County District Attorney's Office's decision to commence and continue the criminal proceeding against Pratt.

172.    The arrest warrant, charging decision, and indictment against Pratt were tainted by Joy, Cargill, Torres, and Gilmore's false statements to the Houston Police Department and the Harris County District Attorney's Office.

173.    Joy, Cargill, Torres, and Gilmore's false statements misdirected the Houston Police Department and the Harris County District Attorney's Office into believing that Pratt had committed a crime.

174.    The criminal proceeding terminated in Pratt's favor when all charges were dismissed on June 27, 2025.

175.    Pratt was innocent.

176.    Pratt never unlawfully entered an illegal enterprise with several known criminals to commit the offense of Tampering with a Government Record with Intent to Defraud or Harm.

177.    Pratt never, in combination with these known criminals, unlawfully and knowingly made a false entry into a government record, namely, a Texas State Inspection Report with the intent to defraud or harm another.

178.    Pratt never agreed to engage in this offense with the known criminals.

22

179.    Pratt never improperly assisted with the transfer of inspection machines between inspection stations, which caused the entry of a false Texas Inspection Report into the Texas Information Management System in furtherance of any agreement with the known criminals.

180.    Joy, Cargill, Torres, and Gilmore lacked probable cause in procuring the criminal proceeding against Pratt.

181.    Joy, Cargill, Torres, and Gilmore's statements to the Houston Police Department and the Harris County District Attorney's Office, as detailed above, were false.

182.    Joy, Cargill, Torres, and Gilmore knew that their statements were false when they made them.

183.    Joy, Cargill, Torres, and Gilmore knew that Pratt had not unlawfully entered an illegal enterprise with several known criminals to commit the offense of Tampering with a Government Record with Intent to Defraud or Harm.

184.    Joy, Cargill, Torres, and Gilmore knew that Pratt had not, in combination with these known criminals, unlawfully and knowingly made a false entry into a government record, namely, a Texas State Inspection Report with the intent to defraud or harm another.

185.    Joy, Cargill, Torres, and Gilmore knew that Pratt had not agreed to engage in this offense with the known criminals.

186.    Joy, Cargill, Torres, and Gilmore knew that Pratt had not improperly assisted with the transfer of inspection machines between inspection stations, which caused the entry of a false Texas Inspection Report into the Texas Information Management System in furtherance of any agreement with the known criminals.

187.    Joy, Cargill, Torres, and Gilmore knew that Pratt had not committed any crime when they made their false statements to the Houston Police Department and the Harris County

District Attorney's Office.

188. Because Joy, Cargill, Torres, and Gilmore knew that their statements to the Houston Police Department and Harris County District Attorney's Office were false, Joy, Cargill, Torres, and Gilmore lacked probable cause to procure the criminal prosecution against Pratt.

189. Malice can be inferred by a lack of probable cause.

190. Due to a lack of probable cause, Joy, Cargill, Torres, and Gilmore acted with malice in bringing about the criminal prosecution against Pratt.

191. Further, Joy, Cargill, Torres, and Gilmore were seeking to harm to Pratt when they made their false statements to the Houston Police Department and the Harris County District Attorney's Office because Pratt had previously informed the Texas Department of Public Safety that Torres was not properly executing her duties as an auditor.

192. Pratt has been damaged by Defendants' misconduct.

193. Specifically, Pratt's reputation has been tarnished, he has lost the business that he spent decades cultivating, and his future career prospects have been severely compromised, if not completely extinguished.

194. As a result of the foregoing, Pratt is entitled to damages in an amount to be determined at trial, plus prejudgment interest, expenses, costs and disbursements.

**AS AND FOR A FOURTH CAUSE OF ACTION AGAINST JOY, GILMORE, AND GARIBAY**

**(Tortious Interference with Prospective Business Relations)**

195. Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

196. An individual engages in tortious interference with prospective business relations when (1) there is a reasonable probability that the plaintiff and another party would have entered

24

into a business relationship; (2) an intentional, malicious intervention or an independently tortious or unlawful act performed by the defendant with a conscious desire to prevent the relationship from occurring or with knowledge that the interference was certain or substantially likely to occur as a result of its conduct; (3) a lack of privilege or justification for the defendant's actions; and (4) actual harm or damages suffered by the plaintiff as a result of the defendant's interference, *i.e.*, that the defendant's actions prevented the relationship from occurring.

197. Pratt was the sole distributor for Opus Inspection, a state-authorized manufacturer of automobile inspection systems in the State of Texas.

198. Pratt had acted as Opus Inspection's sole distributor from 2006 to 2024.

199. Following Pratt's arrest, Joy, Gilmore, and Garibay intentionally made false statements to Opus Inspection regarding Pratt's purported involvement in criminal activity related to the improper use of automobile inspection systems.

200. These false statements made by Joy, Gilmore, and Garibay constituted defamation.

201. These false statements made by Joy, Gilmore, and Garibay constituted business disparagement/trade libel.

202. Joy, Gilmore, and Garibay also directed Opus Inspection not to renew its distribution contract with Pratt.

203. Joy, Gilmore, and Garibay knew that interference with Pratt's business arrangement was certain or substantially likely to occur as a result of their actions.

204. Joy, Gilmore, and Garibay lacked any justification, as they knew that the statements they made to Opus Inspection regarding Pratt were false.

205. Pratt's last distribution contract with Opus Inspection was prematurely terminated on November 7, 2024.

206.    Prior to the actions taken by Joy, Gilmore, and Garibay, Opus Inspection regularly renewed its distribution contract with Pratt upon expiration as a matter of course.

207.    As a result, it was reasonably probable that Pratt and Opus Inspection would have continued their business relationship by entering a new distribution agreement following the expiration of Pratt's last distribution contract with Opus Inspection.

208.    As a result of the actions taken by Joy, Gilmore, and Garibay, Opus Inspection prematurely terminated its distribution contract with Pratt and declined to enter into a new distribution contract.

209.    Pratt suffered damages as a result of the actions taken by Joy, Gilmore, and Garibay.

210.    Specifically, Pratt suffered significant future economic losses when he lost his distribution arrangement with Opus Inspection as a result of the actions taken by Joy, Gilmore, and Garibay.

211.    As a result of the foregoing, Pratt is entitled to damages in an amount to be determined at trial, plus prejudgment interest, expenses, costs and disbursements.

## PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

(i)    on the first cause of action for violation of the Fourth Amendment of the Constitution of the United States (malicious prosecution), a judgment against Joy, Cargill, Torres, and Gilmore awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to reputation, emotional distress, past and future economic losses, and punitive damages plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(ii)    on the second cause of action for violation of the Fourteenth Amendment of the Constitution of the United States (substantive due process), a judgment against Joy, Cargill, Torres, and Gilmore awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to reputation, emotional distress, past and future economic losses, and punitive damages plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

26

(iii)   on the third cause of action for malicious prosecution, a judgment against Joy, Cargill, Torres, and Gilmore awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to reputation, emotional distress, past and future economic losses, loss of future career prospects, and punitive damages, plus prejudgment interest, expenses, costs and disbursements;

(iv)   on the fourth cause of action for tortious interference with prospective business relations, a judgment against Joy, Gilmore, and Garibay awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, past and future economic losses, loss of future career prospects, and punitive damages, plus prejudgment interest, expenses, costs and disbursements; and

(v)   awarding Plaintiff such other and further relief as the Court deems just, equitable and proper.

Dated: June 26, 2026

Respectfully submitted,

**OFFIT KURMAN, P.A.**

*/s/ Kimberly C. Lau (w/ permission by NSE)*
Kimberly C. Lau, attorney-in-charge
   (*pro hac vice* forthcoming)
   kimberly.lau@offitkurman.com
James E. Figliozzi
   (*pro hac vice* forthcoming)
   james.figliozzi@offitkurman.com
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel: (212) 545-1900
Fax: (212) 545-1656

-and-

**NELSON S. EBAUGH, P.C.**

*/s/ Nelson S. Ebaugh*
Nelson S. Ebaugh
   Texas Bar No. 24007139
   SDTX No. 24270
3730 Kirby Drive, Suite 1200
Houston, TX 77098
Tel: (713) 752-0700
Fax: (713) 739-0500
nebaugh@ebaughlaw.com

4916-3055-5571, v. 13